DAVIS, Judge.
 

 Michael Lehrke challenges the trial court’s order involuntarily placing him in a public facility for a period not to exceed two months. We reverse.
 

 Initially we note that although Lehrke’s commitment ended in November 2007, this issue is not moot as his rights may still be affected by the trial court’s order pursuant to section 402.33(8)(a), Florida Statutes (2007), which allows the State to seek a lien against an involuntarily committed person’s property for the costs associated with the commitment long after completion of the commitment.
 
 See Godwin v. State,
 
 593 So.2d 211, 213 (Fla. 1992) (concluding that “[t]he imposition of a lien under section 402.33(8) on the property of an involuntarily committed person is a collateral legal consequence” rendering the issue not moot).
 
 [1]
 

 Turning to the merits of Lehrke’s argument, in order to involuntarily commit an individual, the State must prove by clear and convincing evidence the criteria spelled out in section 394.467, Florida Statutes (2007). Pursuant to that section, the State must show that the individual has a mental illness and has either refused voluntary placement or is unable to determine whether placement is necessary. § 394.467(l)(a)(l). Here, it is undisputed that Lehrke was diagnosed with atypical psychosis and that he refused voluntary placement. However, pursuant to subsection 394.467(l)(a)(2), the State must also show that Lehrke either is likely to suffer neglect without treatment or that “[tjhere
 
 *309
 
 is a substantial likelihood that in the near future he ... will inflict serious bodily harm on himself ... or another person, as evidenced by recent behavior causing, attempting, or threatening such harm.” Here, the general magistrate based its recommendation of involuntary commitment on this latter requirement.
 

 At the hearing before the magistrate, the State’s psychiatrist specifically testified that there was a substantial likelihood that, if released, Lehrke would inflict serious bodily harm “[b]oth, on himself accidentally and on others intentionally or acting out his delusions or other behavior that we are not really clear about.” When asked why “this situation pose[s] a real and present threat of substantial harm to the patient’s well-being,” the doctor stated, “Well, we have incomplete records for information about where he’s mixing the medication with alcohol, with his neglecting himself. So all this suggests (indiscernible) behavior to himself and others.” As to a threat of harm to others, the doctor repeatedly referred to Lehrke’s “threatening” behavior, but when pushed by Lehrke’s counsel to give specific examples of threats Lehrke had made to others, the doctor could only point to Lehrke’s threat to sue for a violation of his civil rights.
 

 Our review of the evidence presented below leads us to conclude that the State failed to meet its burden under section 394.467. Evidence that Lehrke became agitated and wanted to be released from his Baker Act hold in no way suggests that he was likely to harm someone. Furthermore, the only evidence that he would inflict harm on himself was the psychiatrist’s testimony that he may accidentally injure himself because if “faced with actual risk or danger” he would not be capable of taking reasonable steps to protect himself. The doctor also referred to “incomplete records for information about where he’s mixing the medication with alcohol.”
 

 Because this record does not contain clear and convincing evidence to support the finding that Lehrke was substantially likely to inflict serious bodily harm to himself or others if released, we must reverse the trial court’s involuntary commitment order.
 
 See Blue v. State,
 
 764 So.2d 697, 698 (Fla. 1st DCA 2000) (“Appellant is unstable and threatening to others at times. Her emotional outbursts scare her family. Her examining psychiatrist testified [ajppellant can be pleasant sometimes, but is generally very argumentative and hostile. Her interaction with other patients can escalate into conflicts and problems. Without specificity, the evidence is not clear and convincing that there is a substantial likelihood that in the near future [ajppellant will inflict serious bodily harm on herself or another person.”).
 

 Reversed.
 

 SILBERMAN and CRENSHAW, JJ., Concur.
 

 [1]
 

 . We also note that the exception to subsection 402.33(8) found in subsection 402.33(2) does not apply to Lehrke because the record does not reflect that his “only sources of income are from state and federal aid” and does indicate that he owns real property.